United States Court of Appeals
Fifth Circuit

**F I L E D**

June 29, 2006

Charles R. Fulbruge III
Clerk

In the

United States Court of Appeals

for the Fifth Circuit

_____

Nᵒ 05-70038

_____

ERIC LYNN MOORE,

Petitioner-Appellee,

VERSUS

NATHANIEL QUARTERMAN,
DIRECTOR, TEXAS DEPARTMENT OF CRIMINAL JUSTICE,
CORRECTIONAL INSTITUTIONS DIVISION,

Respondent-Appellant.

_____

Appeal from the United States District Court
for the Eastern District of Texas

_____

Before SMITH, GARZA, and DENNIS,
Circuit Judges.

JERRY E. SMITH, Circuit Judge:

Eric Moore was convicted of capital murder and sentenced to death in 1991. In the wake of *Atkins v. Virginia*, 536 U.S. 304 (2002), he filed a successive petition for habeas corpus relief in state court, arguing that he is mentally retarded and thus ineligible for the death penalty. The petition was dismissed by the Texas Court of Criminal Appeals ("TCCA").

Moore received permission to file a successive federal habeas petition. The district court ultimately found him to be mentally retarded and accordingly granted him the requested relief. But because Moore failed to exhaust the remedies available to him on his *Atkins* claim in state court, we vacate and remand with in-

struction to dismiss the petition without prejudice.

## I.
### A.

In December 1990 Moore and three other men broke into the home of Richard and Elizabeth Ayers, an elderly couple. The men robbed and shot the couple, killing Elizabeth Ayers and paralyzing Richard Ayers.

Moore was convicted of capital murder and sentenced to death in June 1991. He appealed his conviction and sentence, but the TCCA affirmed both in June 1994. *Moore v. State*, 882 S.W.2d 844 (Tex. Crim. App. 1994), *cert. denied*, 513 U.S. 1114 (1995). Moore then filed his first petition for habeas relief in state court, which was denied by the TCCA in November 1998. *Ex parte Moore*, No. 38,670-01 (Tex. Crim. App. Nov. 25, 1998). His first federal habeas petition likewise was denied in November 2001. *Moore v. Cockrell*, No. 99-CV-18 (E.D. Tex. Nov. 26 2001). We affirmed the denial of the initial petition in November 2002. *Moore v. Cockrell*, No. 01-41489, 54 Fed. Appx. 591 (5th Cir. 2002), *cert. denied*, 538 U.S. 965 (2003).[1]

### B.

In *Atkins*, 536 U.S. at 321, the Court established for the first time that the execution of mentally retarded defendants violates the Eighth Amendment. Moore then filed a successive habeas petition in state court under TEX. CODE CRIM. PROC. art. 11.071 § 5(a), arguing that he is ineligible for the death penalty because he is mentally retarded and that this ground for relief was not available to him when he filed his first habeas petition.[2]

Moore asserted mental retardation as indicated by his score of 74 on an IQ test taken when he was in grade school, his placement in special education throughout his schooling, and his history of head injuries, at least one of which occurred when he was nine or ten years old. To substantiate these claims, he cited to the trial record but provided no other evidence. He requested an "opportunity to be evaluated" and an evidentiary hearing, but the TCCA dismissed the successive petition as an abuse of the writ, asserting that Moore's petition "fail[ed] to contain sufficient specific facts which would satisfy the requirements" of article 11.071 § 5(a). *Ex Parte Moore*, No. 38,670-02 (Tex. Crim. App. Feb. 5, 2003).

### C.

Moore then sought permission from this court to file a second habeas petition in federal court. We allowed him to do so on the basis of 28 U.S.C. § 2244(b)(2)(A), finding that he had made a *prima facie* showing of entitlement to relief under *Atkins* sufficient to warrant further exploration of his claim. *In re Moore*,

---

[1] Neither Moore's initial state petition nor his initial federal petition requested relief on the basis of mental retardation.

[2] Article 11.071 § 5(a) states, in relevant part, that

[i]f a subsequent application for a writ of habeas corpus is filed after filing an initial application, a court may not consider the merits of or grant relief based on the subsequent application unless the application contains sufficient specific facts establishing that . . . the current claims and issues have not been and could not have been presented previously in a timely initial application or in a previously considered application filed under this article or Article 11.07 because the factual or legal basis for the claim was unavailable on the date the applicant filed the previous application . . . .

67 Fed. Appx. 252 (table) (5th Cir. 2003). We noted, however, that "the facts surrounding Moore's alleged retardation have not been developed, and the parties have presented scant factual or legal grounds for us to assess the procedural default issue" that was raised by the state as a defense. *Id*.

We directed the district court to perform its own review of the record to determine whether Moore had met § 2244's requirements for filing a successive habeas petition. If the district court was satisfied that those requirements had been met, it was instructed to consider the merits of Moore's claim and the state's defenses. *Id*.

### D.

In his federal petition, unlike in his state petition, Moore lays out the three criteria used by the American Association on Mental Retardation ("AAMR") to diagnose mental retardation and alleges reasons why he satisfies each.[3] As in his state petition, he asserts that he scored a 74 on an IQ test when he was seven years old. He argues that this score indicates both subaverage intellectual functioning and an onset of retardation before age

eighteen.[4] He also contends that his poor performance in school and other events in his personal history that are a part of the trial record indicate a deficiency in the adaptive skill areas of functional academics, social skills, self-direction, and health and safety.[5]

On receiving Moore's successive petition, the district court ordered a stay of execution. Hoping to develop the record in advance of a hearing on the merits of his claim, Moore then moved the court to authorize his counsel to obtain "expert investigatory services," including a psychologist trained in the field of mental retardation and a mitigation investigator.

The district court denied the motion as premature and later denied the state's motion to dismiss the petition, agreeing with us that Moore had met the § 2244(b)(2)(A) requirements for filing a successive habeas petition. *Moore v. Johnson*, No. 03-CV-224 (E.D. Tex. May 15, 2003). Finding fault with the state court's application of article 11.071 § 5(a), the court granted Moore habeas relief, ordering the state to release him from custody unless, within 180 days, it reopened his state habeas petition and conducted a fact-finding hearing to determine whether he is entitled to relief under *Atkins*. *Moore v. Cockrell*, No. 03-CV-

---

[3] The AAMR states that mental retardation "is characterized by [1] significantly subaverage intellectual functioning, existing concurrently with [2] related limitations in two or more of the following applicable adaptive skill areas: communication, self-care, home living, social skills, community use, self-direction, health and safety, functional academics, leisure, and work. [3] Mental retardation manifests before age 18." Mental Retardation: Defiition, Classification, and Systems of Supports 5 (9th ed. 1992), *quoted in Atkins*, 536 U.S. at 309 n.3.

[4] Citing a psychiatric textbook, the *Atkins* Court, 536 U.S. at 309 n.5, noted that "an IQ between 70 and 75 or lower . . . is typically considered the cutoff score for the intellectual function prong of the mental retardation definition."

[5] In his state petition, Moore did not contend that he is limited in two or more adaptive skill areas. He makes this particular claim for the first time in his federal petition. In addition, he attaches portions of his school records to his federal petition, a step he did not take when he filed his state petition.

3

224 (E.D. Tex. July 28, 2003).

The state appealed, arguing that a district court can grant habeas relief only if it finds that a defendant is in custody in violation of the Constitution or laws or treaties of the United States. The state contended that the court's determination that the state had misapplied its own procedural rule was not sufficient. Moore cross-appealed, arguing that he is entitled to an evidentiary hearing in federal court on his claim of mental retardation and that his claim is not procedurally defaulted.

We agreed with the state and vacated, instructing the court to determine on remand whether Moore is entitled to an evidentiary hearing and, regardless of whether it held such a hearing, whether Moore's *Atkins* claim is procedurally defaulted. On a finding of no default, we directed the court to determine whether Moore is entitled to relief on the merits of his claim. *Moore v. Dretke*, 369 F.3d 844, 846 (5th Cir. 2004).

E.

In June 2004, the district court issued an order stating it already had decided, in refusing to alter or amend the now-vacated writ, that there was no procedural default. *Moore v. Dretke*, No. 03-CV-224 (E.D. Tex. June 8, 2004).[6] It granted an evidentiary hearing and,

---

[6] "A federal court may not consider a state prisoner's constitutional claim if the state courts based their rejection of that claim on an adequate and independent state ground." *Emery v. Johnson*, 139 F.3d 191, 194-95 (5th Cir. 1998). If a state court rejects a habeas petition based on a purely procedural ground, rather than on a consideration of the merits of the constitutional claim, the dismissal is independent of that claim. As long as the application of the procedural rule is adequate (i.e., (continued...)

in doing so, rejected the state's contention that Moore was not entitled to such a hearing under 28 U.S.C. § 2254(e)(2)(A) because he had failed factually to develop his *Atkins* claim in state court. The court held that § 2254(e)-(2)(A) did not strip Moore of his entitlement to an evidentiary hearing, because it determined that Moore was prevented from developing his claim by the state court's improper application of article 11.071 § 5(a). *Id.*

---

[6](...continued)
not arbitrary), it bars federal review of the constitutional claim. "It is not always easy, however, to determine whether a state court decision is based on state procedural grounds or, instead, on the court's interpretation of federal law." *Id.* at 195.

The state court dismissed Moore's successive habeas petition for failure to meet the requirements of article 11.071 § 5(a), the relevant text of which is laid out *supra* at note 2. The federal district court initially determined that the state court's ruling did not result in a procedural default of Moore's *Atkins* claim for either one of two possible reasons: (1) The dismissal under article 11.071 § 5(a) is independent of the *Atkins* claim because all that the statute requires is an allegation of specific facts establishing that the factual or legal basis of the asserted claim was previously unavailable; the ruling is inadequate, however, because given that minimal procedural requirement, the dismissal of Moore's petition was arbitrary; or (2) The dismissal is not independent of the *Atkins* claim, because the TCCA performs a threshold merits inquiry under article 11.071 § 5(a).

When it later ruled on the merits of Moore's *Atkins* claim, the court adopted only holding (1). *See infra*. The district court never ruled on whether, as the state contends on appeal, Moore's claim is procedurally defaulted under 28 U.S.C. § 2254-(b)(1)(A) for failure to exhaust state court remedies.

4

During the three-day hearing, Moore introduced the testimony of Dr. Antolin Llorente, a licensed psychologist who attested to Moore's substandard intelligence and limitations in adaptive skills. He opined—based on his own interaction with Moore (including his administration of an additional IQ test) and his interviews of family members, friends, teachers, and employers—that Moore is mentally retarded. Moore proffered the direct testimony of various family members and friends, most of whom indicated that Moore had been "slow" and incapable of handling some of the basic requirements of daily living from an early age.

The state countered with the testimony of Dr. Gary Mears, a licensed and board-certified psychologist who had examined Moore. Mears asserted that Moore has good communication and interpersonal skills and was capable of recalling with clarity his early childhood experiences, his academic and work histories, and his criminal record. Mears examined Moore's school and psychological testing records and concluded that although Moore is arguably of substandard intelligence, he is not deficient in any of the AAMR's enumerated adaptive skill areas. Mears noted that Moore had in fact made a reasonable effort to succeed in life.

The state also challenged the validity of Moore's IQ scores and emphasized that he had not in fact been in special education throughout his schooling. The state introduced the testimony of some of Moore's teachers, who believed that his poor performance in an academic setting was not on account of substandard ability, but because of his disinterest and his refusal to apply himself.

The state also proffered the testimony of four correctional officers who had interacted with Moore on a daily basis. All of them indicated that Moore communicates well and successfully socializes with others.

Following the hearing, the district court again granted Moore habeas relief, holding that he is mentally retarded and thus ineligible for the death penalty pursuant to *Atkins*. *Moore v. Dretke*, No. 03-CV-224 (E.D. Tex. July 1, 2005).[7] The court found that the state court's dismissal of Moore's petition was not a ruling on the merits, but rather was an independent, though inadequate, application of article 11.071 § 5(a). The court therefore employed a *de novo* standard of review in assessing the merits of Moore's claim, determining that no deference was owed to the state court's ruling under the Anti-Terrorism and Effective Death Penalty Act ("AEDPA"), 28 U.S.C. § 2254.

The state appeals, advancing three main arguments in the alternative: (1) Moore's claim is procedurally defaulted under 28 U.S.C. § 2254(b)(1)(A) because he failed to exhaust his state court remedies before proceeding to federal court; the petition he filed with the TCCA amounted to a mere conclusional allegation of mental retardation that deprived the state court of the opportunity to rule on the substance of his claim; (2) the state court's dismissal of Moore's successive petition was merits-based and accordingly should be upheld given the deference it is owed under AEDPA; and (3) even if the district court was correct in employing a *de novo* standard, the district court's factual findings with regard to Moore's intellectual and adaptive functioning are clearly erroneous, and its legal conclusion that Moore falls under the protection of *Atkins* is incor-

_____

[7] The court directed the state to release Moore from custody unless, within 180 days, it permanently stayed his execution or reformed his sentence to life imprisonment.

rect.[8]

## II.
### A.

In the district court, the state opposed Moore's request for an evidentiary hearing on the basis of 28 U.S.C. § 2254(e)(2), arguing that Moore had failed factually to develop his *Atkins* claim in state court and thus should not

---

[8] Although the state represents in its briefs that it does not waive the argument that Moore's *Atkins* claim is procedurally defaulted because the state court's dismissal was predicated on an independent and adequate state ground, the state offers no support for that argument other than to claim that "the issue is certainly debatable." It instead spends much of its brief discussing the effect of the state court's ruling if it is in fact merits-based and thus not independent of Moore's constitutional claim. Because the state failed adequately to brief the issue of whether the state court's dismissal of Moore's successive petition provides an independent and adequate bar to federal habeas review, the argument is waived. *See United States v. Martinez*, 263 F.3d 436, 438 (5th Cir. 2001).

Accordingly, we will not further analyze this issue of procedural default, although we note that there is disagreement within this circuit with regard to the effect of the dismissal, under article 11.071 § 5(a), of a successive habeas petition raising a previously unavailable factual or legal claim. *Compare Morris v. Dretke*, 413 F.3d 484, 500 n.4 (5th Cir. 2005) (Higginbotham, J., concurring) *with In re Johnson*, 334 F.3d 403, 405 (5th Cir. 2003) (Jones, J., concurring); *see also Moreno v. Dretke*, 2006 WL 1352161, at *4 n.3 (5th Cir. May 18, 2006). We also note that the state has not waived its argument with regard to the particular reason for why there is no procedural default. Although the district court held that the state court dismissal was independent of the merits of Moore's *Atkins* claim, yet inadequate, the state contends that the dismissal arguably was not independent of the merits of the claim.

be allowed such a hearing in federal court. On appeal the state contends that Moore's presentation of new factual allegations, along with supporting evidence, in federal court that he did not include in his state petition implicates the exhaustion requirement of 28 U.S.C. § 2254(b)(1)(A). We have at least twice held that any problems presented by allegations and evidence introduced for the first time on federal review are "more accurately analyzed under the 'exhaustion' rubric . . . ." *Dowthitt v. Johnson*, 230 F.3d 733, 745 (5th Cir. 2000); *see also Morris*, 413 F.3d at 498.

### B.

Under § 2254(b)(1)(A), "[a]n application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that the applicant has exhausted the remedies available in the courts of the State." The exhaustion requirement "is not jurisdictional, but reflects a policy of federal-state comity designed to give the State an initial opportunity to pass upon and correct alleged violations of its prisoners' federal rights." *Anderson v. Johnson*, 338 F.3d 382, 386 (5th Cir. 2003) (internal citations and quotations omitted). Whether a federal habeas petitioner has satisfied the exhaustion requirement is a question of law that we review *de novo*. *Id*.

### C.

The exhaustion requirement is satisfied if petitioner has fairly "presented the substance of his claim to the state courts." *Vasquez v. Hillery*, 474 U.S. 254, 258 (1986). The requirement is not satisfied if he "presents new legal theories or factual claims in his federal habeas petition. We have consistently held that a petitioner fails to exhaust state remedies when he presents *material* additional evidentiary support to the federal court that was not presented to the state court." *Anderson,* 338

F.3d at 386. (internal citations and quotations omitted). Evidence is not material for exhaustion purposes if it "*supplements*, but does not *fundamentally alter*, the claim presented to the state courts." *Id*. at 386-87. The failure to exhaust is a procedural bar to federal review that may be excused if the petitioner "can demonstrate cause for the defaults and actual prejudice." *Martinez v. Johnson*, 255 F.3d 229, 239 (5th Cir. 2001).

### D.

The state argues that Moore's successive state habeas petition was sparse to the point of amounting to a brief, conclusional allegation of mental retardation. The state emphasizes in particular that Moore made no allegations and offered no evidence before the TCCA with regard to his limitations in adaptive skill areas. The state contends that the presentation of such allegations and evidence for the first time in federal court fundamentally alters Moore's *Atkins* claim, rendering it unexhausted. We agree.

In *Anderson*, an "admittedly close case" on whether the petitioner had exhausted his state court remedies with respect to his ineffective assistance of counsel claim, this court asserted that the fact that "the portion of Anderson's state post-conviction brief dedicated to ineffective assistance is remarkably detailed in both fact and law" provided the tipping point in favor of a finding of exhaustion. *Anderson*, 338 F.3d at 388. In *Morris*, a more recent "admittedly close" case that addressed the same question with which we are now faced—whether new evidence introduced in federal court rendered petitioner's *Atkins* claim unexhausted—we similarly emphasized the importance of the detail with which the state petition was presented. *Morris*, 413 F.3d at 496.

The petitioner in *Morris* had not included an IQ score in his successive state habeas petition, because he lacked the funds to obtain the expert assistance required to administer such a test. After his state petition was dismissed, we allowed Morris to file a successive federal habeas petition, and the district court granted him leave to retain expert and investigative assistance. As a result, Morris was able to present a full-scale IQ score of 53 at the subsequent evidentiary hearing on the merits of his federal petition. *Id.* at 489.

The state contended that Morris's *Atkins* claim was unexhausted because he had failed to present this IQ evidence to the state court. We disagreed, asserting that although, as in *Anderson*, Morris's federal claim was "unquestionably in a comparatively stronger evidentiary posture than it was in state court," several factors weighed in Morris's favor. *Id.* at 496 (internal citations and quotations omitted). Most notably,

> [Morris] . . . properly outlined the AAMR's definition for mental retardation, since adopted by the TCCA as one of Texas's current standards for determining mental retardation, [*Ex parte Briseno*, 135 S.W.3d 1, 7-8 (Tex. Crim. App. 2004)], and noted the necessity to meet all three essential prongs of the definition. *See id*. Morris also clearly acknowledged that IQ evidence was lacking in his particular case but still insisted "[t]here is good reason to believe that [Morris is retarded] . . . because of the documented history of adaptive deficits," including Morris's "inability to read and write and his failure in functional academics," "inability to obey the law and follow rules," "inability to avoid victimization," "inability to develop instrumentalities of daily living [and] occupational skills," and "inability to maintain a safe environment,"

*all of which were attested to by the sworn affidavits and school records presented to the state courts.*

*Id.* (emphasis added).

Furthermore, we acknowledged with approval that "Morris saw fit to present an expert affidavit [along with his state petition], which, albeit preliminarily, provided a psychologist's acknowledgment of and support for Morris's mental retardation claim." *Id.* Finally, we noted that Morris had consistently asserted that "given the opportunity and resources, intellectual tests would confirm" his mental retardation. *Id.* Accordingly, we held that the state court had been given a fair opportunity to rule on the substance of Morris's *Atkins* claim and that therefore his presentation of the IQ score for the first time on federal review supplemented, but did not fundamentally alter, that claim.

The successive habeas petition Moore filed with the TCCA pales in comparison to the one we considered in *Morris*. As we have discussed, Moore merely asserted in his petition that he had scored a 74 on an IQ test when he was a child, that he had been placed in special education throughout his schooling, and that he had suffered multiple head injuries, one of which occurred when he was no older than ten.

Moore cited to the trial record in support of these claims but offered neither school records nor supporting affidavits from family members, friends, teachers, or even the psychologist who had testified on his behalf at trial. He referenced neither the AAMR's diagnostic criteria for mental retardation nor the similar definition of retardation contained in § 591.003 of the

Texas Health and Safety Code.[9] Most importantly, he failed to allege that he is deficient in two or more adaptive skill areas and indeed made no mention of adaptive limitations as such.

Moore's contention that he was in special education throughout his schooling arguably could be construed as an allegation that he was only minimally functional in an academic setting. In support of that bare assertion, however, he did not "identify any specific special education classes or provide documentation of those classes," *Moreno*, 2006 WL 1352161, at *4, nor did he offer any reason for why he could not present such evidence. Moore's petition did not touch, even arguably, on any other adaptive skill area, let alone explain why supporting evidence was lacking. Such a petition cannot be considered sufficiently "detailed in fact and law" to warrant a finding of exhaustion.

In *Morris*, 413 F.3d at 497, we noted that the AAMR's three diagnostic criteria are interdependent and that evidence satisfying one prong is, "standing completely on its own," not sufficient to avoid summary dismissal of an *Atkins* claim. Given that interdependence, it cannot be said that where a defendant's state petition completely neglects one prong of the AAMR inquiry, the presentation of evidence in support of that prong on federal review merely supplements his *Atkins* claim.

It is true that Morris's state petition was missing the allegation of a below-average IQ

---

[9] "'[M]ental retardation' means significantly subaverage intellectual functioning that is concurrent with deficits in adaptive behavior and originates during the developmental period." TEX. HEALTH & SAFETY CODE § 591.003(13).

usually needed to support a finding of substandard intellectual functioning. The petition, however, "recognized the lack of [IQ] evidence in his record but noted various school records obtained by his counsel" were indicative of his subpar intelligence. *Id*. at 487. Moreover, the absence of IQ evidence in his state petition was appropriately explained by the fact that Morris at that time lacked the funds to obtain testing.

Moore, by contrast, neglected to specify his adaptive limitations and failed to provide a plausible excuse for why he could not present more than a scintilla of evidence on that prong. Indeed, there is no excuse for why he did not at minimum submit affidavits from his family members confirming his limitations in two or more areas of adaptive functioning. As was true in *Dowthitt*, 230 F.3d at 758, "[g]iven that the family members were willing to testify at a hearing, [Moore] could have easily obtained their affidavits [before he filed his petition in state court]. A reasonable person in [his] place would have done at least as much . . . . Obtaining affidavits from family members is not cost prohibitive."

### E.

We recognize that the *Atkins* Court did not adopt a particular criteria for determining whether a defendant is mentally retarded; the Court instead left to the states "the task of developing appropriate ways to enforce the constitutional restriction . . . ." *Atkins*, 536 U.S. at 317. We also acknowledge that at the time Moore filed his petition, neither the Texas legislature nor the TCCA had developed a precise means of determining whether a criminal defendant qualifies for *Atkins* relief.

The *Atkins* Court, however, did reference the AAMR's criteria and noted that most already-existing statutory definitions of mental retardation "conform to the clinical definitions . . . ." *Id*. at 317 n.22. In addition, in *Ex Parte Briseno*, 135 S.W. 3d 1, 7 (Tex. Crim. App. 2004), the court stated that even before it officially adopted the AAMR's criteria in the *Atkins* context, it had "previously employed" that definition in analyzing allegations of retardation relative to claims made under *Penry v. Lynaugh*, 492 U.S. 302 (1989). Accordingly, it is fair to conclude that even for habeas petitions filed pre-*Briseno*, a petitioner has not adequately presented the substance of his *Atkins* claim to the TCCA unless he has, at the very least, (1) outlined either the AAMR criteria or the substantially equivalent § 591-.003(13) definition of mental retardation and (2) either alleged why he satisfies each criterion or asserted reasons why he is currently incapable of presenting any evidence on a particular prong.

Moore's state court petition is more akin to the type of conclusional allegation that we found insufficient to support exhaustion on an ineffective assistance of counsel claim in *Kunkle v. Dretke*, 352 F.3d 980 (5th Cir. 2003), than it is to the robust claim of mental retardation presented to the state by the petitioner in *Morris*. Moore's *Atkins* claim is therefore defaulted under 28 U.S.C. § 2254(b)(1)(A). Because that finding alone requires the dismissal of the petition, it is unnecessary for us to consider the remaining arguments advanced by the state.

Based on Moore's failure to exhaust his state court remedies, we VACATE the judgment granting the writ, and we REMAND with instruction to dismiss Moore's *Atkins* claim without prejudice and for consideration of *Rhines v. Weber*, 544 U.S. 269 (2005).

DENNIS, Circuit Judge, dissenting:

I respectfully dissent from the majority's decision to vacate the district court's judgment granting Moore relief from the death penalty. Specifically, I do not agree that Moore failed to exhaust his state court remedies. Even if I were to agree that Moore failed to exhaust his state court remedies, I believe that he nevertheless is entitled to federal habeas review because he has shown both sufficient cause for the default and actual prejudice. Additionally, a fundamental miscarriage of justice will result if we fail to consider the merits of Moore's *Atkins* claim. Finally, there was sufficient evidence to support the district court's finding that Moore is mentally retarded. Therefore, the federal district court's ruling granting Moore habeas relief should be affirmed.

1.

Exhaustion of State Remedies

The state presented three alternative arguments on appeal: (1) Moore failed to exhaust state court remedies; (2) the federal district court erred in reviewing Moore's claim *de novo*; and (3) the district court's factual findings were clearly erroneous. The majority opinion disposes of the case on the exhaustion issue, finding that, under *Dowthitt v. Johnson*, this case is "more accurately analyzed under the 'exhaustion' rubric[.]" 230 F.3d 733,

745 (5th Cir. 2000).[1] Because the majority finds that Moore presented material additional evidence in federal court that was not presented to the state court, the majority concludes that Moore's *Atkins* claim is unexhausted, and therefore dismisses his petition. Given the circumstances of this case, however, the majority's finding of failure to exhaust is in error.

My first point of contention is with the test created by the majority. The majority recognizes that Moore filed his subsequent state habeas petition after *Atkins v. Virginia*, 536 U.S. 304, 321 (2002), but before the Texas Court of Criminal Appeals decided *Ex Parte Briseno*, 135 S.W.3d 1, 8 (Tex. Crim. App. 2004), the case in which the Texas Court of Criminal Appeals adopted the definition of mental retardation to be used in *Atkins* cases. Nevertheless, the majority has decided that "it is fair to conclude that even for habeas petitions filed pre-*Briseno*, a petitioner has not adequately presented the substance of his *Atkins* claim to the [Texas Court of Criminal Appeals] unless he has, at the very least, (1) outlined either the AAMR criteria or the substantially equivalent § 591.003(13) definition of mental retardation and (2) either alleged why he satisfies each criterion or asserted reasons why he is currently incapable of presenting any evidence on a particular

---

[1] In footnote 8, the majority concludes that, because it was not adequately briefed, the state has waived its argument that Moore's *Atkins* claim is procedurally defaulted because the state court's dismissal was based on the requirements of TEX. CODE CRIM. PROC. art. 11.071 §5(a), which was an independent and adequate state court ground. I agree with the assessment that this argument is waived.

prong." Apparently, the majority has come to this conclusion because the Texas Court of Criminal Appeals indicated in *Briseno* that it had "previously employed" the AAMR definition of mental retardation in cases making claims under *Penry v. Lynaugh*, 492 U.S. 302 (1989). Though the Texas courts previously had relied on definitions of mental retardation in *Penry* cases, they had not yet clarified what standard would be used in *Atkins* cases, as they were directed to do by the Supreme Court.[2] At the time Moore filed his subsequent state habeas petition, there was nothing in Texas' *Atkins* jurisprudence to direct Moore on how to present evidence of mental retardation in his petition. Therefore, I disagree with the majority that it is "fair to conclude" that Moore was required to present his mental retardation evidence in the manner set forth by the AAMR or the Texas Health and Safety Code.

Despite the fact that Moore was not required to present his mental retardation evidence in accordance with definitions not yet adopted by Texas, Moore did give evidence of mental retardation such that his petition was sufficiently "detailed in fact and law" to warrant a finding of exhaustion.[3] In his subsequent state habeas petition, Moore provided evidence of a low IQ, that he had been in

---

[2] *Atkins*, 536 U.S. at 317 (leaving to the states "the task of developing appropriate ways to enforce the constitutional restriction[.]").

[3] The majority opinion states that Moore's petition "cannot be considered sufficiently 'detailed in fact and law' to warrant a finding of exhaustion."

special education, had brain damage, and that the onset of these problems was prior to age 18. To claim that he is mentally retarded, Moore had to assert: (1) significantly subaverage general intellectual functioning; (2) limitations in adaptive functioning; (3) an onset prior to age 18. *Briseno*, 135 S.W.3d at 8. Clearly, Moore touched on all three of the criteria for mental retardation in his subsequent state habeas petition.[4] Therefore, he "presented the substance of his claim to the state court[]", thus satisfying the exhaustion requirement. *Vasquez v. Hillery*, 474 U.S. 254, 258 (1986).

The majority turns to this Circuit's recent opinion, *Moreno v. Dretke,* as authority to disregard that Moore's claim of being in special education classes is evidence that he suffers from limited adaptive functioning. 2006 WL 1352161 (5th Cir. May 18, 2006). In *Moreno*, this Court declined to issue a COA on Moreno's *Atkins* claim, finding no error in the district court's decision that the state court reasonably held that Moreno did not present a prima facie *Atkins* claim. In his subsequent state habeas petition, Moreno presented evidence that he scored a 64 on an IQ test when he was 35 years old. He also alleged that he attended special education classes as a child, thus arguing that he suffered adaptive limitations. The *Moreno* panel stated that Moreno's "only evidentiary support for [the special education] claim was the

---

[4] The majority does not take issue with Moore's evidence of "significantly subaverage intellectual functioning" and "onset prior to age 18." The only problem appears to be with Moore's evidence of limited adaptive functioning.

13

psychologist's report reciting Moreno's self-reported educational background. He could not identify any specific special education classes or provide documentation of those classes." *Id*. at *4. The majority in this case uses this statement from *Moreno* to conclude that Moore's claim that he was in special education classes is not sufficient to constitute proof of limited adaptive functioning. The majority's conclusion is in error.

In *Moreno*, the Court based its decision on much more than the lack of supporting evidence of special education classes. The *Moreno* panel explained, "[m]uch of this evidence, such as Moreno's employment history, fails to suggest adaptive limitations. Balanced against this meager evidence of adaptive limitations is the substantial evidence that Moreno possesses adaptive behavioral skills." *Id.* The *Moreno* panel did not conclude that claiming to have been in special education classes was not enough to qualify as proof of limited adaptive functioning, but that, in Moreno's case, the evidence to the contrary outweighed the allegations that Moreno was in special education classes because he suffered limited adaptive functioning. This is not the situation in Moore's case, and therefore, the case before us is distinguishable from *Moreno*.

Since Moore adequately presented the substance of his claim in state court - that he is mentally retarded and therefore not eligible for the death penalty according to *Atkins* - his claim was properly exhausted and there was no bar to the district court

14

ruling on the merits of Moore's *Atkins* claim.  Accordingly, any new evidence presented to the district court merely supplemented Moore's state claim.  As the majority explains:

> We have consistently held that a petitioner fails to exhaust state remedies when he presents *material* additional evidentiary support to the federal court that was not presented to state court." *Anderson v. Johnson*, 338 F.3d 382, 386 (5th Cir. 2003).  Evidence is not material for exhaustion purposes if it "*supplements*, but does not *fundamentally alter*, the claim presented to the state court."  *Id*. at 386-87.

To support the claim that he suffers from limited adaptive functioning, Moore offered a vast amount of evidence in federal court that was not presented to state court, including testimony from family, friends, teachers, and neighbors, as well as school records.  This testimony merely supplemented Moore's claim that he was in special education classes and suffered limited adaptive functioning.  Moore is allowed to "supplement and clarify" his claims presented in state court "through expansion of the record" with evidence such as "more sophisticated statistical analyses than were presented in state courts" and "introduction of new factual materials supportive of those already in the record[.]" *See* Randy Hertz & James S. Liebman, Federal Habeas Corpus Practice and Procedure § 23.3c, at 1088-89 (5th ed. 2005) (internal citations omitted).  Because Moore's additional evidence presented in federal court did not "fundamentally alter the legal claim" presented in state court, his claim was not unexhausted.  *See Vasquez*, 474 U.S. at 260.

The majority attempts to distinguish this case from *Morris v.*

15

*Dretke*, 413 F.3d 484 (5th Cir. 2005), a case in which this Circuit found that, though the petitioner presented more evidence in federal court than in state court, his *Atkins* claim was not unexhausted. The Court came to this conclusion even though it found that Morris' federal claim was "unquestionably in comparatively stronger evidentiary posture than it was in state court" because Morris presented an IQ score in federal district court and had not presented an IQ score in his state court habeas petition. *Id*. at 496 (internal citations omitted). The *Morris* Court found that Morris "clearly acknowledged that IQ evidence was lacking in [Morris'] particular case, but still insisted '[t]here is good reason to believe that [Morris is retarded]. . . because of the documented history of adaptive deficits[.]'" *Id*. (citations omitted).

Apparently, the *Morris* Court looked to Morris' evidence of limited adaptive functioning to compensate for the lack of an IQ score. Even the majority in this case concedes the *Morris* Court's point that "the AAMR's three diagnostic criteria are interdependent." *See Id.* at 497. Thus, there is no reason why, in Moore's case, this Court could not look to the evidence of special education and brain injury to deduce that Moore had limited adaptive functioning. This is especially true since, as in *Morris*, there is "nothing in [the] record that shows that [Moore] 'attempted to expedite federal review by deliberately withholding essential facts from the state courts.'" *Id.* at 496. Therefore,

16

the outcome in *Morris* actually supports Moore in this case. Where, as in Moore's situation, the substance of a petitioner's claim was presented in state court, and additional, supplemental evidence is presented in federal court, that petitioner has exhausted his claim in federal court, even if his federal court evidence makes his case stronger.

## 2.

## Exceptions to the Exhaustion Rule

The failure to exhaust may be excused if the petitioner "can demonstrate cause for the defaults and actual prejudice." *Martinez v. Johnson*, 255 F.3d 229, 239 (5th Cir. 2001). This Circuit has recognized that "[c]ause is defined as something external to the petitioner, something that cannot fairly be attributed to him that impedes his efforts to comply with the state procedural rule. 'Cause' factors may include interference by officials that makes compliance with the procedural rule impracticable, a showing that the factual or legal basis for the claim was not reasonably available to counsel, and ineffective assistance of counsel [...] on direct appeal." *Matchett v. Dretke*, 380 F.3d 844, 848-49 (5th Cir. 2004) (internal citations omitted). Further, prejudice is found where "the specific facts and circumstances of the proceeding in which the error occurred" have "worked to the petitioner's *actual* and substantive disadvantage." Hertz & Liebman, *supra*, § 26.3c, at 1346-47 (emphasis in original)(citing *United States v. Frady*, 456 U.S. 152, 170 (1982) and *United States v. Olano*, 507

17

U.S. 725, 734-35, 736, 739-41 (1993)).

Given this standard, it is evident that even if Moore's claims are unexhausted, he satisfies the "cause and prejudice" exception to the exhaustion rule. Though Moore did not provide all of the evidence available to him in order to support his assertion that he attended special education classes as a child, nor did he express his mental retardation evidence using the AAMR categories, he did state that "[t]o date, there has been no published case from the Court of Criminal Appeals giving guidance to what constitutes retardation under Texas law." Contrary to the majority's position, Moore's statement regarding the then-uncertain state of Texas law does provide an explanation of why such supporting evidence was lacking - Moore had not received guidance from Texas courts on how to present his evidence of mental retardation post-*Atkins*. Certainly, something external to Moore, namely that Texas had not yet decided *Briseno*, caused Moore's inability to present his mental retardation evidence according to an established Texas procedure. Further, the facts and circumstances of Moore's case demonstrate that Moore was prejudiced by this lack of guidance. The fact that Moore did not know how to set forth his mental retardation evidence such that it would be acceptable to the Texas Court of Criminal Appeals caused the state court to dismiss Moore's subsequent state habeas petition. This is clearly an "actual and substantive disadvantage" suffered by Moore. As such, Moore has satisfied the "cause and prejudice" exception to the exhaustion rule.

18

Another exception to the exhaustion rule applies to situations where the petitioner can "demonstrate...that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750 (1991). The Supreme Court has made clear that the "miscarriage of justice" exception extends to cases in which "[t]he Constitutional violation has probably resulted in the imposition of a death sentence upon one who is actually innocent of a death sentence." Hertz & Liebman, *supra*, § 26.4, at 1369 (internal citations omitted); *see also Dugger v. Adams*, 489 U.S. 401, 411 n.6 (1989). This means that a petitioner can invoke the "miscarriage of justice" exception if, but for the failure to exhaust, "the petitioner would have not been eligible for the death penalty because some constitutional or state statutory prerequisite for the imposition of a death sentence could not have been satisfied." Hertz & Liebman, *supra*, § 26.4, at 1369-71; *see also Sawyer v. Whitley*, 505 U.S. 333, 343, 345-50 (1992). Moore easily satisfies this exception because, as explained in section 3 of this dissent, when allowed to look at the merits of Moore's *Atkins* claim, the district court properly found that Moore is mentally retarded. Therefore, in accordance with the Supreme Court's finding in *Atkins*, Moore is ineligible for the death penalty, as his execution would constitute cruel and unusual punishment in violation of the Eighth Amendment. In other words, the evidence in this case shows that any alleged failure to exhaust is excused because Moore is actually "innocent of the death

19

penalty."

3.

<u>The District Court's Finding of Mental Retardation</u>

The majority does not reach the issue of whether the district court erred in finding that Moore is mentally retarded. It is necessary to reach this issue, however, because Moore's *Atkins* claim was either exhausted in state court, or his failure to exhaust is excused. Therefore, this appeal cannot be disposed of on a finding of failure to exhaust. Accordingly, it is necessary to turn to the state's argument that the district court's factual findings were clearly erroneous.

The district court analyzed Moore's habeas petition using the AAMR definition of mental retardation, one of the mental retardation definitions adopted by the Texas Court of Criminal Appeals in *Briseno*. The AAMR defines mental retardation as:

> A disability characterized by significant limitations in both intellectual functioning and in adaptive behavior, as expressed in conceptual, social, and practical adaptive skills. This disability originates before age 18. *Briseno*, 135 S.W.3d at 8; American Association of Mental Retardation, MENTAL RETARDATION: DEFINITION, CLASSIFICATION AND SYSTEMS OF SUPPORTS (10th Ed. 2002) at 1.

Therefore, as explained earlier, to prove that he is mentally retarded, Moore had to establish: (1) significantly subaverage general intellectual functioning; (2) limitations in adaptive functioning; and (3) an onset prior to age 18. *See Briseno*, 135 S.W.3d at 8. The district court properly found that Moore presented sufficient evidence to warrant a finding of mental

20

retardation.

First, Moore met his burden of showing that he suffered from subaverage general intellectual functioning. The state claims that the district court erred in finding Moore mentally retarded, because that finding was made in the absence of a single, valid IQ score, and instead on the sole basis of subjective, anecdotal testimony from biased family members. Moore has taken four IQ tests over his lifetime. The first was the Primary Mental Abilities Test ("PMA") given at age 6, on which he scored a 74. He also received a 76 on the WAIS-R taken at age 24 in 1991, which was adjusted to a 72.1 to account for the Flynn effect.[5] On the WAIS-III, administered in 2004, Moore scored a 66. Lastly, Moore took a TONI-2 non-verbal reasoning test and scored in the Very Poor Range. At trial, though Dr. Gary Mears, the state's expert psychologist, did testify that he had some questions about the accuracy of the IQ scores, he also stated that he would agree with Dr. Antolin Llorente, Moore's expert psychologist, that Moore satisfied the significantly subaverage general intellectual functioning prong of the mental retardation definition. Dr. Llorente testified that all of Moore's IQ scores, including the one taken at age 6, were consistent with the WAIS-III score of 66. Dr. Llorente also testified that Moore was assessed for response bias to determine whether he was fabricating his results, and no such

---

[5] The Weschler Adult Intelligence Scales test (the "WAIS") is the standard instrument in the US for assessing intellectual functioning. The Flynn effect recognizes that norm IQ scores across a population have increased approximately 3 points per decade.

bias was found.  Given the agreement among the experts and the concession by the state's expert, there appears to be sufficient evidence for the district court to have determined that Moore satisfied this prong of the definition.

Secondly, to support the claim that he suffers from limited adaptive functioning, Moore offered a significant amount of evidence in federal court, including testimony from family, friends, teachers, and neighbors, as well as school records.[6] Though Dr. Mears stated that Moore was not limited in adaptive functioning, he admitted that he could not effectively assess adaptive functioning without the use of adaptive functioning scales.  Dr. Llorente, though, did confidently conclude that Moore suffered from adaptive deficits in every area of set forth by the DSM-IV or the AAMR.  Likewise, there was sufficient evidence for the district court to conclude that the onset of Moore's mental retardation occurred before age 18.  Again, the experts agreed that this was the case.  In addition to the experts, testimony was given by Moore's family members explaining that it was common knowledge within the community that Moore was "slow" as a child.  Overall, the district court listened to the opinions of experts, heard testimony from family members, and reviewed Moore's academic records, vocational work, communication skills, health and safety, social skills, leisure, self-care, home living, use of community resources, and victimization and gullibility. Based on all of these factors, there was sufficient evidence for the district court to conclude that each prong of the definition of mental retardation was satisfied.  Therefore, it was not clearly

---

[6] There is evidence that Moore was not in special education classes, but in "corrective classes."  It appears that this distinction is inconsequential, because the point is that Moore was not able to keep up with children his age.

22

erroneous for the district court to conclude that Moore is mentally retarded.

4.

District Court's Standard of Review

The majority also does not reach the issue of whether the district court applied an incorrect standard of review to Moore's habeas petition. Again, it is necessary to reach this issue because this case cannot be disposed of on the exhaustion question alone. Considering the procedural history of this case, it is apparent that the district court employed the correct standard of review.

The state takes issue with the district court's decision to review Moore's claim *de novo* and its explanation that it was doing so because the state court's dismissal was procedural in nature and was not an adjudication on the merits. Though the state argues that large portions of Moore's mental retardation claim are procedurally defaulted, the state still maintains that the dismissal of Moore's subsequent state habeas application may not have been independent of *Atkins* and, thus, may not be an absolute procedural dismissal. If this is the case, then the district court should have only reviewed the state court's dismissal to determine whether it was "contrary to, or involved an unreasonable application of, clearly established federal law as determined by the United States Supreme Court, or resulted in a decision based on an unreasonable determination of the facts in light of the evidence

23

presented in the state court proceeding," as directed by AEDPA. 28 U.S.C. § 2254(d)(1)-(2).

However, Moore's claim was not adjudicated on the merits in state court. The Texas Court of Criminal Appeals dismissed Moore's application because it found that Moore had failed to allege specific facts in his application that would satisfy the elements of the Texas subsequent application rule. This was a pure procedural decision, and did not involve the Texas Court of Criminal Appeals hearing Moore's evidence to determine whether he is in fact mentally retarded. When a state court does not adjudicate a claim on its merits, the federal court must determine the claim *de novo*. *Miller v. Johnson*, 200 F.3d 274, 281 n.4 (5th Cir. 2000). Therefore, AEDPA's deferential standard of review does not apply. As such, the district court did not err in undertaking a *de novo* review of Moore's *Atkins* claim.

## Conclusion

For the reasons indicated, the district court did not err in hearing Moore's federal habeas petition. Furthermore, the district court's ruling granting Moore habeas relief was not in error. Because it holds otherwise, I dissent from the majority opinion.

24