United States Court of Appeals
Fifth Circuit

**F I L E D**

**January 29, 2007**

Charles R. Fulbruge III
Clerk

**IN THE UNITED STATES COURT OF APPEALS**

**FOR THE FIFTH CIRCUIT**

No. 05-70021

JOHNNY RAY CONNER,

Petitioner-Appellee,

versus

NATHANIEL QUARTERMAN, Director,
Texas Department of Criminal Justice,
Correctional Institutions Division,

Respondent-Appellant.

Appeal from the United States District Court
for the Southern District of Texas

Before WIENER, BENAVIDES, and STEWART, Circuit Judges.

CARL E. STEWART, Circuit Judge:

The district court granted Johnny Ray Conner's petition for habeas relief from the imposition

of the death penalty for his conviction for capital murder in the course of a robbery. Nathaniel

Quarterman, the Director of the Correctional Institutions Division of the Texas Department of

Criminal Justice ("the Director"), appeals the grant of habeas corpus. The district court granted relief

on Conner's ineffective assistance of counsel claim, premised on the argument that Conner's trial

counsel failed to adequately investigate a leg injury that caused Conner to limp. We reverse the district court's grant of habeas corpus.

## I. FACTUAL AND PROCEDURAL HISTORY

In May 1998, Kathyanna Nguyen, the victim, lived with Tony Tostado behind her grocery store in north Houston. Tostado owned a restaurant next door to the grocery store. On the afternoon of May 17, 1998, Tostado ate lunch with Nguyen and then went to his restaurant to clean up. Shortly thereafter, Julian Gutierrez stopped by the grocery store to get some gas. After pumping the gas, Gutierrez entered the store to pay and heard someone say, "Give me all your money." Gutierrez looked up from counting his own money to see a man pointing a gun at Nguyen's chest. When the robber saw Gutierrez, he turned and pointed the gun at him. Gutierrez dropped the money he was holding and ran from the store. As Gutierrez ran, the robber fired the gun at him, hitting him in the shoulder. Hearing several more gunshots, Gutierrez turned to see the robber shooting at Nguyen. He testified that the robber was wearing white tennis shoes, brown shorts, a white T-shirt, and a red cap. Gutierrez ran back to his car, where he began to feel faint, and he noted that the robber was running away from the store. Gutierrez later identified Conner as the robber.

Hearing gunshots, Tostado locked the doors to his restaurant and hurried over to the store. Upon entering the store, Tostado saw a man with a gun. Although Tostado attempted to grab the assailant, the man was able to get out of the store and run away. Tostado then saw Nguyen on the floor behind the counter bleeding profusely. He immediately called 911 on the pay phone outside the grocery store. While he was on the phone, Tostado saw the fleeing suspect and said that he was not wearing a hat. Tostado was unable to identify later the man he saw running.

2

Other individuals who were outside nearby businesses saw the assailant as he fled the grocery store, and several noted that the man was running with his hand underneath his shirt. Agnes Hernandez, who was stopped at a nearby intersection in her vehicle, decided to follow the robber to see where he went. She described the assailant as a black male wearing a white shirt and dark shorts. He was running with his hands under his shirt and was not wearing a hat. Hernandez never saw the suspect's face but stated that the suspect ran fast for more than a block.

Christine Flores was also driving in the area when she saw a man running down the street and had to slow down in order to avoid hitting him. The man looked directly at Flores as he ran. Flores later identified the man as Conner. She testified that the suspect was wearing blue jeans and no hat. She also stated that the man did not have a tattoo.[1]

Michael Hamilton was driving with his wife, Martha Meyers, near the scene when they saw a man running from the grocery store. As the man crossed the road in front of them, he turned to look back at the grocery store, at which time Meyers was able to see his face. Meyers testified that the suspect was between five feet, ten inches, and six feet, one inch, tall, and wore blue shorts, a light gray T-shirt, a white Nike cap, and long pants. She also stated that the suspect had no tattoo on his face. Hamilton and Meyers followed Hernandez as she followed the fleeing suspect. The assailant ran for some distance before he reached a vehicle, got inside, and drove away. Meyers identified Conner as the man she saw, but Hamilton was never able to identify the suspect.

Hernandez continued to follow the assailant, seeing him almost run over a man and child as he sped away. Eventually, the suspect made his way to a freeway feeder road where he drove over

---

[1]Conner has a tattoo of a teardrop on his cheek.

the grass median to enter the freeway. Hernandez did not follow the vehicle onto the freeway but returned to the scene and told Tostado the direction in which the vehicle fled.

Melecio Sanchez was sitting in a nearby bar. He heard two shots and saw a black man come running out of the store. Sanchez testified that the suspect was wearing a blue cap, white shirt, and dark shorts.

At the scene, Tostado and several others entered the store to help Nguyen. Several witnesses noted that there was money scattered and a great deal of blood on the floor around Nguyen's body. The cash register was open, and there was blood inside the drawer. The police also discovered a juice bottle on the floor near the counter from which they recovered Conner's fingerprint. Another fingerprint was also on the container, but the second fingerprint was never identified.

When the investigation of the crime narrowed to focus on Conner, Conner's photograph was included in a photo spread of suspects shown to witnesses. Three separate witnesses, Gutierrez, Flores, and Meyers, identified Conner from the photo spread. Conner turned himself in to the Harris County Jail on June 17, 1998. Prosecution witnesses presented all of the above evidence at trial; the defense called no witnesses in the guilt/innocence phase of the trial.

Conner was convicted of capital murder for intentionally killing Nguyen by shooting her with a deadly weapon during the commission or attempted commission of a robbery. At the punishment phase of the trial, the State offered evidence of Conner's prior offenses, while the defense offered evidence from family members about Conner's troubled upbringing. The jury returned a death sentence, and the trial court sentenced Conner to death. The Texas Court of Criminal Appeals affirmed Conner's conviction and sentence on September 21, 2001. *Conner v. State*, 67 S.W.3d 192 (Tex. Crim. App. 2001).

4

Conner filed a state habeas petition, alleging, among other things, ineffective assistance of counsel. Conner argued that, while several witnesses noted that the suspect ran very quickly for some distance from the scene of the crime, he could not run easily because of a leg injury in 1996 that caused him to limp on his right side. He also urged that he could not have committed the crime because none of the witnesses noted that the assailant limped. He contended in state habeas proceedings that his trial counsel were ineffective for failing to discover this exculpatory information. His trial lawyers, Ricardo Rodriguez and Jonathan Munier, submitted affidavits to the court, explaining that while they knew Conner had injured his leg, he never mentioned any continuing problems with it and neither of them noticed that Conner limped. The state court found, without conducting any evidentiary hearings, that Conner's attorneys were credible, that they fulfilled their duty as his counsel, and that trial counsel had a reasonable trial strategy. The Texas Court of Criminal Appeals affirmed the lower court.

On December 10, 2002, Conner filed a timely petition for writ of habeas corpus with the federal district court in the Southern District of Texas under the Antiterrorism and Effective Death Penalty Act (AEDPA). Conner again alleged ineffective assistance of counsel for his lawyers' failure to discover his condition, known as "foot drop." Conner's federal habeas petition included several exhibits that were not attached to his petition for state habeas relief, including general information about foot drop and medical records. The medical records included notes from a physician's assistant (PA) who conducted Conner's initial physical after he was convicted. The PA noted that Conner was still afflicted by foot drop at the time of his incarceration, although Conner had to bring the condition to the PA's attention for him to notice it. In addition to the medical records, Conner attached an affidavit, which was introduced during state habeas proceedings as well, from a registered nurse

5

named Fran St. Peter who testified that she did not believe that Conner could have run three blocks at the time of his injury without limping. The affidavits of his trial attorneys that were introduced at the state habeas proceedings were also attached. The Director moved for summary judgment. The district court ordered an evidentiary hearing on Conner's ineffective assistance of counsel claim based on his leg injury and his lawyers' alleged failure to investigate. The Director objected that the standard of 28 U.S.C. § 2254(e) had not been met, but the district court overruled this objection.

At the evidentiary hearing, Dr. Jeffery Gaitz, a board-certified neurologist, testified that Conner's medical records indicated that he had on-going nerve damage that still affected his movements in September of 1999. In a video taken specifically for the evidentiary hearing, apparently without Conner's knowledge, Conner appears, in Dr. Gaitz's opinion, to limp on his right leg when he walks. Dr. Gaitz, based on the video, opined that Conner's limp would be more apparent if Conner were walking fast or running and that a layperson would notice the limp while Conner was running even if he or she didn't notice it while he was walking. However, two guards in the prison where Conner is incarcerated stated that they didn't notice a limp in the video, nor have they noticed Conner limping at any time during their acquaintance, although neither guard has ever seen him run.

Next, the district court heard testimony from Conner's trial counsel, starting with Rodriguez. Rodriguez stated that Conner told him about his leg injury, saying "I broke my leg, but I'm fine now. I went for therapy." Rodriguez noted that Conner never raised the issue of a limp, nor did he limp in Rodriguez's presence. Rodriguez did look briefly at Conner's medical records but did not delve into them after he saw that Conner had been released from therapy more than two years before the facts giving rise to this conviction. Rodriguez admitted to not knowing whether Conner was healed

6

at the end of his time in therapy. Rodriguez also testified that Conner maintained his innocence throughout the proceedings.

Rodriguez's co-counsel, Jonathan Munier, was appointed just before jury selection began. Munier also noted that Conner did not mention his leg injury. Munier also testified that Conner walked in front of the jury everyday, and he contended that Conner's gait was different at the evidentiary hearing than it had been during his trial in 1998.

Conner testified that he could not run in May 1998. He stated that he told his trial attorneys this on several occasions, but they refused to discuss the issue. He said that Rodriguez told him that the limp had no relevancy to the case.

Based on this evidence, the district court found that the state courts' application of *Strickland* and ineffective assistance of counsel doctrine was objectively unreasonable because the behavior of counsel in not investigating Conner's medical condition was deficient and prejudicial. The district court granted him habeas relief. The Director appealed to this court.

## II. DISCUSSION

A. Exhaustion

As a threshold matter, this court must decide if Conner has exhausted his state court remedies as required by 28 U.S.C. § 2254(b)(1)(A), which states that "an application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that the applicant has exhausted the remedies available in the courts of the State." Exhaustion is a question of law that is reviewed de novo. *Moore v. Quarterman*, 454 F.3d 484, 491 (5th Cir. 2006). "The exhaustion requirement is satisfied if petitioner has fairly 'presented the substance of his claim to the state courts.'" *Id.* (quoting *Vasquez v. Hillery*, 474 U.S. 254, 258

7

(1986)). If a petitioner "presents material additional evidentiary support to the federal court that was not presented to the state court," *Anderson v. Johnson*, 338 F.3d 382, 386 (5th Cir. 2003), a claim is unexhausted and procedurally barred unless the petitioner can show cause for the non-exhaustion and prejudice. *Moore*, 454 F.3d at 491. The Director argues that because Conner did not present his medical records to the state courts, his claim is unexhausted under AEDPA. We disagree. The substance of Conner's claim was fairly presented to the state courts despite the fact that his medical records were not attached.

In *Kunkle v. Dretke*, 352 F.3d 980 (5th Cir. 2003), the court relied on *Brown v. Estelle*, 701 F.2d 494 (5th Cir. 1983), for the general test that a claim is not exhausted if the additional evidence in federal court puts the claim in a "significantly different and stronger" position than in state court. *Kunkle*, 352 F.3d at 988. Here, however, it is not clear that the medical records put Conner's claim in any stronger position than it was in state court because much of the information contained in the records is in the affidavit of Fran St. Peter. St. Peter, a Registered Nurse, provides the dates of Conner's pre-arrest treatment, noting that the injury was not healed as of February 5, 1997. Her medical opinion is that such an injury was unlikely to heal spontaneously. Even if the medical records put Conner's claim in a "stronger evidentiary posture," *Anderson*, 338 F.3d at 388 (citing *Joyner v. King*, 786 F.2d 1317, 1320 (5th Cir. 1986)), the claim is exhausted because "the supplemental evidence . . . [does] not fundamentally alter the legal claim already considered by the state courts, and, therefore, [does] not require that [Conner] be remitted to state court for consideration of that evidence." *Vasquez*, 474 U.S. at 260.

In *Moore*, the petitioner sought for the first time in a successive state habeas application to show that he was ineligible for the death penalty because of mental retardation after the Supreme

Court announced a new rule of law in *Atkins v. Virginia*, 536 U.S. 304 (2002). *Moore*, 454 F.3d at 486. To substantiate his claims that he was retarded, he cited to testimony in the trial record about his IQ of 74 and his placement in special education classes in school. He did not provide any additional evidence in state court. He requested an opportunity to be evaluated, but this request was denied by the state court, which dismissed his petition as an abuse of the writ. Moore was granted permission to file a second habeas petition in federal court. For the first time in his federal petition, Moore specifically discussed the standards used by the American Association on Mental Retardation (AAMR) to diagnose his condition and specifically stated that he met each piece of the criteria. The district court held an evidentiary hearing after reviewing the petition and then granted Moore habeas relief. The state appealed, and this court overturned the grant of habeas relief, holding that the district court improperly considered evidence on an unexhausted claim.

The court noted the importance of the detail of the petitioner's claim in his state habeas petition. *Moore*, 454 F.3d at 491. The court found that Moore, while stating that he was in special education classes, failed to provide anything more than a bare assertion to support that statement. What was needed, the court said, was identification of specific special education classes or documentation of those classes. *Id.* at 492. Here, Conner was fairly specific in his application. While St. Peter's affidavit is not as specific as medical records would be, it satisfies *Moore*'s requirement that Conner make more than a bare assertion of his claim in his state habeas petition. Additionally, Conner did not "attempt[] to expedite federal review by deliberately withholding essential facts from the state courts." *Vasquez*, 474 U.S. at 260; *see also Anderson*, 338 F.3d at 389. The state court had before it enough evidence to adequately consider Conner's claim for ineffective assistance of

9

counsel based on his attorneys' alleged failure to review his medical history. This exhausted claim is eligible for federal habeas consideration under AEDPA.

B. Evidentiary Hearing

After finding that Conner exhausted his state court remedies, the district court held an evidentiary hearing on Conner's ineffective assistance of counsel claim. The Director objected that such a hearing wasn't warranted under AEDPA, but the district court overruled this objection. Evidentiary hearings in federal habeas proceedings are governed by 28 U.S.C. § 2254(e)(2), which states that if an applicant has failed to develop the factual basis of his claim in state court proceedings, a federal court should not hold an evidentiary hearing on the claim. The district court's ruling about the effect of 28 U.S.C. § 2254(e)(2) is reviewed de novo, but the district court's decision to grant an evidentiary hearing after considering 28 U.S.C. § 2254(e)(2) is reviewed for abuse of discretion. *Roberts v. Dretke*, 381 F.3d 491, 497 (5th Cir. 2004); *see also Guidry v. Dretke*, 397 F.3d 306, 320 (5th Cir. 2005).

The real question in this case is if Conner failed to diligently present his case to the state courts because he did not present his medical records during his state habeas proceedings. Conner argues that he would have presented more evidence to the state court if he had been granted an evidentiary hearing, but a request for an evidentiary hearing is not enough to show diligence. *Dowthitt v. Johnson*, 230 F.3d 733, 758 (5th Cir. 2000). Instead, Conner must have developed the factual basis of his claim in his state court petition. *Id.*

In *Roberts v. Dretke*, 356 F.3d 632 (5th Cir. 2004), the court considered the grant of an evidentiary hearing where the petitioner claimed that his counsel was ineffective for failing to investigate medical records that would show that the petitioner had a mental illness. Included in his

10

federal habeas petition were medical records that had not been included in his state habeas petition. The court held that "seeking and presenting medical records . . . available at the time of the state habeas hearing is within the exercise of due diligence." *Id.* at 641 (interpreting § 2254(e)(2)). Therefore, the court refused to consider this evidence in deciding whether to grant Roberts a COA on his ineffective assistance of counsel claim. *Id.* (granting the COA on other grounds). Because Conner did not diligently develop the factual basis for his claim in state court, the federal habeas court improperly granted an evidentiary hearing under 28 U.S.C. § 2254(e)(2).

C. Ineffective Assistance of Counsel

This court reviews the state court's decision that Conner has not adequately alleged a *Strickland* violation for whether the decision was contrary to, or an unreasonable application of, clearly established federal law. *Busby v. Dretke*, 359 F.3d 708, 717 (5th Cir.), *cert. denied*, 541 U.S. 1087 (2004). *Strickland v. Washington*, 466 U.S. 668 (1984), held that when a defendant proves that counsel's performance fell below an objective standard of reasonableness in light of the surrounding circumstances and that this deficiency caused prejudice to the defendant by denying him a fair trial, the defendant's Sixth Amendment right to counsel has been violated. *Id.* at 687-88, 690.

The deficiency alleged here is that counsel did not conduct an adequate investigation in preparing for the guilt/innocence phase of the trial because they did not investigate Conner's medical records to determine that he had a limp. The judgment is whether counsel's investigation was reasonable, not whether counsel's trial strategy was reasonable. *Wiggins v. Smith*, 539 U.S. 510, 522-23 (2003). The prejudice inquiry requires Conner to show a reasonable probability that the outcome of the proceeding would have been different if counsel's performance had been sufficient. *Strickland*,

11

466 U.S. at 693. Generally, either prong of the *Strickland* inquiry may be evaluated first as both are necessary to make out a showing of ineffective assistance. *Id.* at 697.

It is clear in this case that the state court's decision was not objectively unreasonable because Conner cannot show prejudice resulting from his counsel's alleged deficiency in not reviewing his medical history. Conner contends that if his attorneys had argued that he had a limp in front of the jury, the outcome of the trial would likely have been different. We do not agree. Conner has done nothing to lessen the impact of the other evidence against him, including his fingerprints on a bottle near the register of the grocery store and his identification by three witnesses, including one whom he had just shot. Despite any doubt about the eyewitness identification that the new evidence creates, the evidence presented by the prosecution prevents Conner from being able to establish prejudice, assuming arguendo that his counsel's performance was deficient. If nothing else, Gutierrez's identification and Conner's fingerprints remain strong evidence that Conner was the man in the store that day.[2]

Additionally, this court held in *Jordan v. Dretke*, 416 F.3d 363 (5th Cir. 2005), that even if a petitioner demonstrates prejudice before the federal habeas court, it is unlikely that it will be prejudice that would justify holding that the state court's decision was objectively unreasonable without "direct evidence" of prejudice. *Id.* at 370-71. There is no testimony about Conner's gait around the time of the incident, and Conner's attorneys stated that they never noticed him limping. While Fran St. Peter stated that she believed Conner would have had a limp around the time of the accident, she appears to have based this assessment entirely on his medical records, and she does not

---

[2]Conner cannot establish prejudice even if the evidence presented at the evidentiary hearing in district court were to be considered.

mention conducting a physical exam on Conner. Additionally, the prison PA who examined Conner on his admission to the facility did not even notice that Conner had foot drop until it was pointed out to him. Neither the videotape of Conner walking nor the testimony of Dr. Gaitz provides any direct evidence of Conner's affliction at the time of the crime. There was never any testimony that Conner was unable to run. The witnesses were never asked if they noticed that the man they saw running had an unusual gait. Thus, Conner has not directly contradicted any witness's testimony because none of them said the assailant was not limping.

This lack of directly contradictory evidence showing prejudice, combined with the fact that the state presented additional evidence against Conner at trial, demonstrate that the state court's application of *Strickland* was not unreasonable. Therefore, the district court erred in granting Conner habeas relief.

### III. CONCLUSION

For the above reasons, we reverse the district court's grant of habeas relief and render judgment denying habeas corpus.